Brassard, J.
INTRODUCTION
This is an action by plaintiff Carleton Matthews against his former employer, Ocean Spray Cranberries, Inc., alleging that Ocean Spray terminated him on April 23, 1992 because of his race in violation of G.L.c. 151B, §4(1). This matter is before the court on cross-motions for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the plaintiffs motion for summary judgment is DENIED, and defendant Ocean Spray’s motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows. The defendant Ocean Spray Cranberries, Inc. (Ocean Spray) manufactures a variety of food products including cranberry juice, cranberry sauce, and Cranfruit. Plaintiff Carleton Matthews (Matthews), an African-American male, was employed as a forklift operator at *203 Ocean Spray’s Middleboro facility from October 12, 1987 until his termination on April 23, 1992, purportedly for violating the company’s plant rules against stealing.
Ocean Spray has promulgated a set of plant rules to guide the conduct of its employees. These rules distinguish between major violations and minor violations, with the progression of discipline dependent on the nature of the offense. The enumerated major violations “are of such a nature that immediate suspension and time off or discharge may be warranted even for the first offense.” Conversely, the enumerated minor violations are those for which “suspensions or discharge may not necessarily be appropriate on the first offense, but for which time off and eventual discharge would occur after repeated or frequent violations . Penalties for minor violations shall be progressive up to and including discharge as appropriate.” All employees receive a copy of these rules when they are hired, and the plant rules are posted at all times on the employee bulletin board next to the employee work schedules and assignments.
Just after noon on Friday, April 17, 1992, Tammy Shidner, a secretary at Ocean Spray’s Middleboro plant, was sitting at the receptionist desk when she observed Matthews leaving the building with a case of product, partially covered by a jacket, under his arm. Because Shidner believed she had observed a major violation of the plant rules, the theft of company property, she immediately informed her supervisor, Human Resources Manager Barbara Denker (Denker) of what she had seen, prompting an investigation. Denker first contacted Ocean Spray’s shipping and employee sales departments to determine whether Matthews had purchased or had otherwise been given company product. Upon learning that Matthews had not been authorized to remove product from the facility, Denker met with Matthews and his supervisor, Mustapha Finni, to discuss the incident.
During the meeting, Matthews admitted that he had removed company product from the premises without authorization. However, Matthews explained that while on the job, he had observed dented cans of cranberiy sauce in a damaged cardboard case inside a B.F.I. dumpster in the lot outside the shipping area of the plant, and had removed the case from the dumpster and placed it on his forklift. Matthews further asserted that he believed that he could take this product out of the plant without permission because it had been discarded in the trash. When Denker suggested that he return the product at issue, Matthews stated that he had given the sauce to his wife at lunch time and therefore no longer had it -with him. About an hour after this meeting, Matthews met his wife, retrieved the product from her, and returned to Denker’s office with a Shaw’s Supermarket shopping bag containing seven clean cans of cranberry sauce, each of which had a dent in its side.
Approximately twenty minutes later, after consulting with Acting Plant Manager Linda Hogan, Denker again met with Matthews, who this time was accompanied by Tom White, the union steward. During this second meeting, Matthews again admitted to taking company product without authorization, and acknowledged that he had received a copy of the plant rules at his orientation. Matthews further acknowledged his awareness of a memorandum issued to all employees on September 20, 1991, stating that before removing company property from the premises, an employee must submit an “Authority to Remove Property” form containing the signature of either a manager or supervisor. Matthews admitted that despite his awareness of this policy, he had not completed the required form before removing the cans of cranberry sauce on the date in question. However, he maintained that the rules concerning the proper removal of company property from the premises were unclear and that he had misunderstood the authorization policy in that he believed that discarded product found in a dumpster was no longer company property subject to the company’s property removal authorization form requirement.
Nonetheless, Denker did not find Matthews’ explanation credible because a company memo that had been distributed to all employees on 3/20/89 and was widely posted throughout the plant clarified that “stealing” includes “removing product from any designated production or storage area” without authorization and “bringing product or company property outside of the area in which it normally resides without authorization.” In addition, Denker believed that at the time of Matthews’ offense, the new authorization form policy had been widely promulgated throughout the plant and was being followed by other employees wishing to remove various objects from the dumpsters. At the conclusion of the meeting, Denker informed Matthews that he was suspended from his job pending further investigation.
Following Matthew’s suspension, Denker conducted a further investigation of the incident. She reviewed company records concerning damaged products and determined that no cans of cranberry sauce had been reported as damaged, destroyed or reworked either on April 17, 1992 or in the week and one-half prior thereto. Because garbage is collected daily from the B.F.I. dumpster, Denker concluded that Matthews had not in fact found the seven cans of cranberry sauce at issue inside the dumpster. Further, because Shidner had stated that Matthews left the plant carrying a case of product, but Matthews returned only seven cans of sauce, Denker concluded that Matthews had not been truthful about the quantity of product taken. She then presented the results of her investigation to Plant Manager Hogan, who reviewed Denker’s findings as well as Matthews’ personnel file. The file revealed that in 1988, Matthews had received *204 a written warning and suspension for a major violation of the plant rules: fighting with a co-employee. The written warning explicitly stated that “your involvement in any major violation in the future will place your job in jeopardy.” Based on the results of Denker’s investigation, Matthews’ admission of guilt, and his disciplinary record, Hogan decided to terminate Matthew’s employment on April 23, 1992.
As a member ofTeamsters Local Union No. 653, and pursuant to a collective bargaining agreement with Ocean Spray, Matthews brought a grievance against the company, alleging that his termination was due to Hogan’s anti-union animus. Following arbitration, the Arbitrator issued a written decision concluding that Ocean Spray had terminated Matthews for just cause due to his violation of the plant rules against theft. Matthews did not appeal the arbitration decision. However, on September 1, 1992, Matthews filed a charge of discrimination with the Department of Labor’s Office of Federal Contract Compliance Programs (OFCCP). The OFCCP initially issued a Notice of Violation on May 25, 1993, but upon Ocean Spray’s request for reconsideration, OFCCP renewed its investigation, rescinded the Notice of Violation, and ultimately, issued detailed findings concluding that Ocean Spray’s termination of Matthews for his admitted theft of company product was proper and in no way racially motivated.
Meanwhile, on August 31, 1992, Matthews filed a charge of racial discrimination with the Massachusetts Commission Against Discrimination (MCAD). MCAD issued a finding of probable cause on May 31, 1993, and on August 17, Ocean Spray filed a Motion for Reconsideration with the agency. Before MCAD had an opportunity to rule on this motion, however, Matthews withdrew his charge before the agency and filed the present suit in Superior Court on September 22, 1993.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
I. ORDER OF PROOF UNDER CHAPTER 151B
General Laws c. 151B, §4(1) makes it an unlawful practice for an employer to refuse to hire or employ, to bar or discharge from employment, or to discriminate against in compensation or terms, conditions or privileges of employment any individual because of his or her race, color, religious creed, national origin, sex or ancestry. G.L.c. 151B, §4(1) (1994). Disparate treatment cases under c. 15IB involve the intentional differential treatment of individual employees based on an impermissible statutory factor such as race. School Committee of Braintree v. MCAD, 377 Mass. 424, 428 (1979). It is well established that in a disparate treatment case, proof of the employer’s discriminatory motive is critical: the focus is on how a particular employee was treated and why. Smith College v. MCAD, 376 Mass. 221, 227 (1978); Whalen v. NYNEX Information Resources Co., 419 Mass. 792, 795 (1995). Thus, the plaintiff ultimately must show that the employer intentionally used an impermissible characteristic such as race as the determinative factor in making the employment decision at issue. School Committee of Braintree v. MCAD, supra at 428.
In the majority of disparate treatment cases, where direct evidence of racial animus is not available, the employer’s discriminatory motive must be inferred from the mere fact of differential treatment between otherwise comparably situated groups or individuals. Smith College v. MCAD, supra at 228; Johansen v. NCR Comten, Inc., 30 Mass.App.Ct. 294, 298 (1991). Accordingly, in employment discrimination cases alleging disparate treatment, Massachusetts courts have adopted the three stage order of proof set forth by the U.S. Supreme Court under the federal antidiscrimination provisions of Title VII. Wheelock College v. MCAD, 371 Mass. 130, 138 (1976); Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 440 (1995).
Under this framework, the burden of proof as to the unlawfulness of the employment action at issue never leaves the plaintiff. Wheelock College v. MCAD, supra at 139; Sarni Original Dry Cleaners, Inc. v. Cooke, 388 Mass. 611, 614-15 (1983). Thus, the plaintiff bears the ultimate burden of persuading the finder of fact that he was the victim of discrimination in violation of chapter 15IB. Blare v. Husky Injection Molding Systems Boston, Inc., supra at 445. The court will, however, employ a framework of shifting burdens of production to progressively sharpen the inquiry into the “elusive factual determination of intentional discrimination." Whalen v. NYNEX Information Resources Co., supra at 795.
Initially, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination under c. 15IB, §4. Smith College v. MCAD, supra at 229; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441. In the case of an allegedly discriminatory termination, the plaintiff must estab *205 lish that he is a member of a statutorily protected class, that he was qualified for the position at issue and performed his job at an acceptable level, that he was nonetheless terminated, and that the employer sought to fill his former position with a similarly qualified individual. McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 435 (1989); Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441. The plaintiff need not prove each of these elements of his prima facie case, but must merely produce evidence that, if believed, would be sufficient to establish facts that would entitle him to judgment. Whalen v. NYNEX Information Resources Co., supra at 796.
The plaintiffs ability to demonstrate a prima facie case under the statute creates a presumption that the employer acted with a discriminatory motive, since the prima facie case serves to eliminate the most common nondiscriminatory reasons for an adverse employment decision. Sarni Original Dry Cleaners, Inc. v. Cooke, supra at 615; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441. However, the employer can then rebut this presumption of discrimination by articulating a legitimate, nondiscriminatory reason for terminating the plaintiff. Wheelock College at 136; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441. The employer must not only articulate a legitimate reason, but must further produce credible underlying facts to support his assertion that the articulated reason was in fact the real reason for the adverse decision. Smith College v. MCAD, supra at 229; Sarni Original Dry Cleaners, Inc. v. Cooke, supra at 614-15. The production of credible evidence of a legitimate reason for the employer’s actions dispels the presumption of discrimination created by the plaintiffs prima facie case. Blare v, Husky Injection Molding Systems Boston, Inc., supra at 443; McMillan v. M.S.P.C.A., 880 F.Supp. 900, 905 (D.Mass. 1995).
Accordingly, once the employer articulates a nondiscriminatory reason for terminating the plaintiff, the burden returns to the plaintiff to persuade the court by a fair preponderance of the evidence that the employer’s proffered reason for the adverse employment decision was not the real reason, but is in fact a pretext for discrimination. Sarni Original Dry Cleaners, Inc. v. Cooke, supra at 615; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 444-45. The plaintiff cannot prevail simply by showing that the employer’s articulated reason was unwise, unfair, or absurd; rather, the plaintiff must show that the articulated reason lacks reasonable support in the evidence or is wholly unbelievable. Smith College v. MCAD, supra at 230, 232; Wheelock College v. MCAD, supra at 138-39; Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 767-768 (1986). Massachusetts courts have found a number of factors to be relevant in showing pretext and in determining the ultimate issue of discrimination. These include not only evidence of the employer’s past treatment of the plaintiff, but also evidence of the employer’s general practices or policies with respect to members of the statutorily protected class. Lewis v. Area II Homecare for Senior Citizens, Inc., supra at 767-68. Further, statistical evidence is often relevant in disparate treatment cases. McMillan v. M.S.P.C.A., supra at 909. Thus, for example, statistical evidence showing that an employment practice is generally carried out in a nondiscriminatory manner is relevant in a disparate treatment case, since it tends to show that the action complained of by an individual employee was not the result of discrimination. Springfield Board of Police Comrs. v. MCAD, 375 Mass. 782, 783 (1978); Smith College v. MCAD, supra at 228-29.
Nonetheless, the most probative means of proving that the plaintiffs termination was a pretext for racial discrimination is to demonstrate that similarly situated white employees were treated differently. McDonnell Douglas Corp. v. Green, 36 L.Ed.2d 668, 679 (1973); Williams v. Frank, 757 F.Supp. 112, 118 (D.Mass. 1991). Thus, in most cases, the absence of any showing that the plaintiff was treated differently from those similarly situated will require a finding for the defendant. Williams v. Frank, supra at 118; Thomas v. Digital Equip. Corp., 702 F.Supp. 22, 25 (D.Mass. 1988), aff'd, 880 F.2d 1486 (1st Cir. 1989).
As clarified by the Supreme Judicial Court in a recent decision, Massachusetts law does not require the plaintiff to affirmatively prove the existence of discriminatory animus in order to prevail. Blare v. Husky Injection Molding Systems Boston, Inc., supra at 444. Rather, the plaintiff is able to satisfy his burden of proving pretext simply by demonstrating by a preponderance of the evidence that the employer’s proffered reason for its action is unworthy of belief or not the real reason. Id. at 444-45; Tate v. Department of Mental Health, 419 Mass. 356, 363 (1995). Thus, under chapter 151B, proof that the employer’s proffered reason for its adverse employment decision is pretextual, coupled with the prima facie case, entitles the plaintiff to recover as a matter of law. Blare v. Husky Injection Molding Systems Boston, Inc., supra at 444.
Summary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment. Brunner v. Stone & Webster Eng’g Corp., 413 Mass. 698, 705 (1992); Blare v. Husky Injection Molding Systems Boston, Inc., supra at 439. However, summary judgment is not always inappropriate in such cases. Blare v. Husky Injection Molding Systems Boston, Inc., supra at 440. In order to survive summary judgment on a chapter 151B claim, the plaintiff must produce enough evidence to raise a genuine issue of material fact as to whether the employer’s articulated reason for the adverse employment decision was the real reason. Blare v. Husky Injection Molding Systems Boston, Inc., supra at 447. Where the plaintiff fails to carry his burden of producing sufficient evidence of *206 pretext, summary judgment in favor of the employer is appropriate. Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 770 (1986); Tate v. Department of Mental Health, supra at 364.
II. SIMILARLY SITUATED EMPLOYEES: PLAINTIFF’S SHOWING OF PRETEXT
This Court agrees with the plaintiff that the termination of one’s employment for the unauthorized removal of damaged product from a dumpster seems a draconian measure. Nonetheless, the role of this Court is not to sit as a super-employment board adjudicating the wisdom or folly of a particular employment policy. “It is an employer’s business prerogative to develop as many arbitrary, ridiculous and irrational rules as it sees fit.” Smith v. Monsanto Chemical Co., 770 F.2d 719, 723 n.3 (8th Cir.), cert. den., 474 U.S. 1102 (1985). The Court’s only concern under chapter 15 IB is that the employer must apply such rules in an even-handed, non-discriminatory manner. Id.
In the present case, Matthews attempts to demonstrate that Ocean Spray’s proffered reason for his termination, the violation of plant rules against theft, is a pretext for racial discrimination by offering evidence that Ocean Spray treated white violators of the plant rules less harshly. In a disparate treatment case, the plaintiff has the burden of proving that he was treated differently from others who are similarly situated in all relevant aspects. Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), cert. den., 115 S.Ct. 1958; Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995). Thus, in a case involving termination, the plaintiff must show that he was similarly situated to non-terminated employees in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations. Id. “First and foremost, two employees are not similarly situated when the offense each is accused of is not the same.” Williams v. Frank, supra at 119. Thus, a black postal worker terminated for purchasing a $250 money order from his own stamp credit, intentionally cashing it and failing to account for the missing funds was not similarly situated to a white postal worker who accidently had a cash shortage of $700. Id. Although the offenses of two employees need not be identical in order for them to be similarly situated, the two offenses must be of comparable seriousness. McDonnell Douglas Corp. v. Green, supra at 679. Thus, where a black plaintiff was terminated for his involvement in a fight with a white co-employee, who was not terminated for the incident, the two were not similarly situated because although the white employee allegedly harassed the plaintiff, leading the plaintiff to strike him in the face, the offenses of harassment and instigating a physical assault are not comparable. Morgan v. Massachusetts General Hosp., 901 F.2d 186, 189 (1st Cir. 1990).
In addition, two employees are not similarly situated where their relative work records and disciplinary histories are not comparable. Pagano v. Frank, 983 F.2d 343, 345 (1st Cir. 1993); Williams v. Frank, supra at 119. For example, where an Italian plaintiff terminated for poor attendance attempted to show disparate treatment by comparing himself to a non-Italian employee not fired for his poor attendance by analyzing the number of times the two men were late for work during a finite period, the two were not similarly situated where the plaintiff had a substantially longer and more varied history of attendance problems, and where the other employee improved his attendance after a formal warning but the plaintiff did not. Pagano v. Frank, supra at 348. Further, when items such as sick leave and absences without leave were taken into account, the plaintiff had been involved in 53 instances involving attendance during the seventeen month period at issue while the other employee had only been involved in 14 such instances. Id. Compare Boston v. Massachusetts Commission Against Discrimination, 39 Mass.App.Ct. 234, 243 (1995) (noting that evidence that the plaintiff had multiple violations of regulations prior to his termination was relevant); Eldred v. Consolidated Freightways Corp. of Delaware, 898 F.Supp. 928, 939 (D.Mass. 1995) (concluding that a terminated female plaintiff demonstrated disparate treatment where men with inferior performance and disciplinary records were retained and promoted).
Moreover, two employees are not similarly situated where the situation of one may be distinguished due to extenuating or mitigating circumstances. Thus, an alcoholic plaintiff terminated for failing to comply with his employer’s deadline for submitting an unexcused absence certification form was not similarly situated to two non-disabled employees who had not been fired for missing the same deadline where one missed the deadline when his physician informed the employer that he could not complete the form in time and the other missed the deadline because he was hospitalized, but plaintiff had no comparable extenuating circumstances surrounding his failure to meet the deadline. Barbour v. Dynamics Research Corp., 63 F.3d 32, 41 (1st Cir. 1995).
Finally, where a decision affecting the plaintiff was made after a particular employment policy was placed in effect, the plaintiff generally will not be similarly situated to other employees who were subject to the previous policy. Hooker v. Tufts University, 581 F.Supp. 104, 114 (1983) (concluding that a female physical education instructor who was not tenured was not similarly situated to other physical education instructors who were tenured prior to the college’s administrative decision to slow or halt further tenuring in physical education department).
A. PLAINTIFF’S PROFFERED EVIDENCE OF PRETEXT
Matthews focuses on six particular employees who he asserts were similarly situated to himself with respect to violating the plant rules. He contends that *207 these six individuals, all of whom are white, were disciplined less severely by Ocean Spray than he was, despite the fact that their offenses were comparable to his theft of the cans of cranberry sauce.
1. Other Employees Who Stole Company Product
According to Ocean Spray’s plant rules, the stealing of company property is a major violation which may result in suspension or discharge upon the first offense. Matthews contends that two white employees, Margaret Harback and Edward Andrews, were caught stealing company product yet were not terminated. In early 1989, Harback was called in by Ocean Spray management and informed that undercover investigators had been placed among the workers to see who was taking product from the plant, and that she had been observed on two occasions taking concentrate out of the room. Harback explained that she had been taking the juice to the ladies’ room refrigerator for the employees to drink while they were working, but that she had not taken the juice off of the premises. Thus, the conduct observed by the investigators was not a violation of company policy. However, during this meeting, Harback voluntarily informed Ocean Spray management that she had on occasion retrieved concentrate from the dumpster and taken it home with her. Information produced during the same undercover investigation indicated that Edward Andrews was one of many employees taking company product off the premises without permission. However, Ocean Spray concluded there was not enough evidence to warrant disciplinary action. Thus, Andrews was given a verbal warning and Ocean Spray decided to clarify company policy regarding stealing.
Despite the fact that all three employees were accused of identical offenses, this Court finds that neither Harback nor Andrews was similarly situated to Matthews for disciplinary purposes. Initially, it should be noted that at the time Matthews was caught stealing, he had a prior disciplinary action on his record: a thirty day suspension without pay due to his involvement in a fist fight with a co-worker.[1] However, Matthews fails to produce any evidence concerning either Harback’s or Andrews’ disciplinary records at the time of their offenses. It is well established that employees are not similarly situated where their relative work records and disciplinary histories are not the same. Pagano v. Frank, supra at 345; Williams v. Frank, supra at 119.
More importantly, the fact that Harback volunteered her taking of product from the dumpster as opposed to merely admitting it after being confronted with an allegation of theft and an alleged eyewitness constitutes the type of mitigating circumstances that makes her not similarly situated to the plaintiff, who was “caught in the act.” See Barbour v. Dynamics Research Corp., supra at 41.
Finally, both Harback’s and Andrews’ conduct occurred before Ocean Spray issued the clarifying memo on stealing and implemented the authorization form policy. In Matthews’ case, Ocean Spray determined that he was aware of the clarifying memo and authorization form policy, but deliberately failed to follow the proper procedure. Thus, Harback and Andrews were disciplined under a different “policy” than was Matthews. See Hooker v. Tufts University, supra at 114. Thus, because these two employees were not similarly situated to Matthews, evidence of Ocean Spray’s disciplinary action toward them is not probative of disparate treatment and does not assist the plaintiff in his attempt to demonstrate pretext.
2. Employees who Committed Time Card Violations
Under the plant rules, the stealing of company time, which includes deliberate time card falsification and punching another’s time card, is a major violation which may result in suspension or discharge upon the first offense. Matthews contends that three white employees, Arthur Racine, Harold Beaudry and Glenn Hammarberg, committed thefts of company time, yet were not terminated. Racine handwrote on his time card a start time that was 15-20 minutes earlier than the time his supervisor first saw Racine at his station. Although he was initially terminated, after further investigation, the termination was changed to a thirty day suspension, because Ocean Spray concluded that Racine had not deliberately falsified his timecard. Although Racine, a cook, was not actually at his work station at 10:08, the time reflected on his card, he was on the premises talking to the employee who worked the cook’s shift before him to get information on what had occurred during the previous shift. At the time of Racine’s offense, Ocean Spray did not have an official policy on how to manually complete time cards, but rather, employees were verbally instructed on how to-fill out time cards by their supervisors.
On several occasions in February of 1992, Beaudry was observed getting in his car 15-20 minutes earlier than the time reflected on his time card. Beaudry explained that he had misunderstood the proper procedure for manually completing time cards, which was a newly-instituted policy. Ocean Spray determined that he had not “stolen" company time because he frequently began work early without recording the earlier start time on his card and would also work through lunch, so that the total time Beaudry actually worked and the total time for which he was paid were the same. Therefore, Beaudry was not terminated, but instead was suspended without pay for two weeks.
Similarly, Hammarberg left the premises at 12:45 p.m. but signed out at 1:15 p.m. However, he had not taken his lunch break or any other break that day, so that he had worked the expected total number of hours despite the inaccuracy of his time card. Thus, Ocean Spray determined that Hammarberg did not deliber *208 ately “steal” time from the company, but rather, misunderstood the rules concerning the manual completion of time cards. Accordingly, he was suspended without pay for two weeks.
In response to these incidents, Ocean Spray issued a memo on 6/30/92 clarifying the time card policy, which stated that “whether an individual chooses to punch in/out or writes in/out, the time card must reflect the actual time an employee arrives at and leaves from his/her work station.” The memo further stated that “recently, several incidents have surfaced where individuals found themselves in violation of our Plant Rules regarding time cards, hence placing their jobs in jeopardy,” and concludes that “We see inaccurate time cards as the falsification of company records, and, depending on the circumstances, as stealing. If the circumstances warrant, an individual will be terminated.”
Matthews contends that because deliberate time-card falsification constitutes the “theft” of company time under Ocean Spray’s plant rules, Racine, Beaudry and Hammarberg were all similarly situated to him yet were disciplined less harshly. While the offenses committed by two employees need not be identical in order for them to be similarly situated, the offenses must be of comparable seriousness. McDonnell Douglas Corp. v. Green, supra at 679. Matthews disregards the fact that although the times recorded by Racine, Beaudry and Hammarberg on their cards were inaccurate, the net result was that Ocean Spray did not pay these three employees for any hours in excess of those actually worked, so that they did not, in fact, “steal” company time. Thus, Racine, Beaudry and Hammarberg did not commit the same or a similarly serious offense as did Matthews, and they are not similarly situated to him for the purposes of a disparate treatment analysis.
Further, Matthews attempts to show disparate treatment by noting that Racine, Beaudry and Hammarberg’s assertions that they misunderstood the rules regarding time card completion were accepted by Ocean Spray and considered mitigating circumstances, resulting in suspensions rather than terminations, whereas his own assertion that he misunderstood the rules on theft was not so accepted. It is clear, however, that the plant rules do not distinguish between deliberate theft and “accidental” theft in the same way that they distinguish between deliberate time card falsification and failure to complete time cards as required.
Moreover, Ocean Spray was warranted in taking into account the degree to which the time card completion policies versus theft policies had been clearly established and promulgated at the times of these employee’s respective offenses. Thus, this Court concludes that Racine, Beaudry and Hammarberg were not similarly situated to Matthews for disciplinary purposes, justifying Ocean Spray’s differential treatment of them.
3. Leaves of Absence
Finally, Matthews offers Ocean Spray’s treatment of a white employee named Edward Swales as evidence of disparate treatment.
While employed by Ocean Spray, Swales was convicted of the sexual assault of a minor, a felony, and sentenced to a prison term of ninety days. He then requested an unpaid leave of absence from work, which Ocean Spray granted after determining that the company could adequately cover Swales’ position in his absence. At the time Swales was granted this leave of absence, he had one disciplinary warning on his record for attendance violations. Matthews thus argues that Ocean Spray’s failure to discipline a white “felon” who violated plant rules by engaging in “immoral conduct or indecency” and further, the company’s accommodation of that employee’s request for a leave of absence should be compared to Ocean Spray’s harsh disciplinary action against him.
Despite Matthews’ apparent suggestion that Ocean Spray should have disciplined Swales for committing a felony, he has failed to introduce evidence either that Swales’ crime was somehow related to his employment, or that conviction of a felony constitutes a per se violation of Ocean Spray’s plant rules. While “immoral conduct or indecency” is enumerated as a major violation of the plant rules, this presumably refers to such conduct occurring on the company premises. Thus, given that Swales did not commit any violation of the plant rules, he is not similarly situated to the plaintiff, and Ocean Spray’s allegedly “lenient” treatment of Swales is not relevant to show disparate treatment.
A more appropriate comparison is the one Matthews attempts to draw between Ocean Spray’s treatment of Swales with respect to his leave of absence and its treatment of another black employee, Russell Hautman, who was terminated for violating Ocean Spray’s attendance policy. Hautman failed to show up for work for an extended period of time without prior explanation. After being notified that he was terminated, Hautman told Ocean Spray that he had been hospitalized during the extended absence at issue. However, when Ocean Spray asked him to document the hospitalization, he was unable to do so. After the plaintiff initiated the present suit against Ocean Spray, the company had an investigator look into the reason for Hautman’s absence and learned that Haut-man had in fact been incarcerated during his unexcused absence.
Nonetheless, Ocean Spray contends, and Matthews fails to introduce evidence to dispute, that Hautman never requested a leave of absence for his incarceration. Moreover, Hautman had requested and been granted a prior leave of absence seven months earlier for psychiatric counseling. Thus, it is clear that Swales *209 and Hautman were not similarly situated with respect to their absences, since Hautman neither provided an explanation for his absence nor requested time off prior to his termination for violating the attendance policy. Compare Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995) (holding that a disabled employee denied a leave of absence for incarceration was not similarly situated to a non-disabled employee whose supervisor was unaware at the time he granted the employee’s leave of absence that the requested leave was for the purpose of incarceration). Hence, it appears that none of the six white employees stressed in the plaintiffs brief are similarly situated in all relevant aspects to Matthews for the purposes of a disparate treatment analysis.
B. DEFENDANT’S PROFFERED EVIDENCE OF CONSISTENT TREATMENT
Beyond contesting the relevance of the plaintiffs proffered evidence, Ocean Spray has also introduced evidence of the company’s consistent treatment of similarly situated black and white employees in order to establish a lack of pretext.
1. Other Employees who Stole Product
First, Ocean Spray points to two white employees, Charles Trainor and Norbert Viverios, who, like Matthews, were terminated for violating the plant rules against theft. In March of 1981, two supervisors stationed in the plant to monitor employee theft observed Trainor carrying six cases of product out of the plant and placing them in his truck without company permission. Trainor was discharged for attempted theft and destruction of company property after admitting the theft and producing no extenuating circumstances. Further, in November of 1989, Viverios was observed taking two cases of juice out of a dumpster and placing them into his car without company permission. When questioned, he admitted taking the juice without authorization, and was therefore terminated for the theft of company property.
Matthews argues that Trainor and Viverios are not similarly situated to himself because they admitted to deliberately taking product without permission, while he simply misunderstood that Ocean Spray’s policy required an authorization form for product located in a dumpster. However, Ocean Spray clearly did not believe that Matthews misunderstood the stealing and authorization form policies, largely because these policies were widely promulgated throughout the plant. Nonetheless, whether or not Ocean Spray was correct in its belief that Matthews deliberately disregarded company policy is not material to the analysis of pretext. The touchstone is what really motivated Ocean Spray to act as it did, and not whether Ocean Spray’s justification for its action was factually correct. Wheelock College, supra at 136; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441. Accordingly, this Court concludes that Trainor and Viverios were similarly situated to Matthews in that all three committed identical offenses: the removal of company product from the premises without prior authorization. Hence, Ocean Spray’s termination of Trainor and Viverios, both white, tends to demonstrate a neutral, consistent application of plant rules and not disparate treatment because of race.
2. Employees Who Stole Company Time
Ocean Spray further asserts that it has consistently terminated employees of both races determined to have “stolen” company time, an offense of comparable seriousness to Matthews’ offense of stealing company product. For example, a white employee, Gary Ritz, was terminated in September of 1993 for the theft of company time. Ritz left the facility during his shift without punching out and then returned, so that it appeared he had been working continuously during that time. He admitted understanding the proper time card procedures and admitted that he had deliberately failed to punch out because he did not want to be docked time. Similarly, a black employee, Rappy Rapoza, was also terminated for deliberately falsifying his time card, which is considered the theft of company time under the plant rules. This evidence tends to demonstrate consistent treatment by Ocean Spray of similarly situated employees of both races.
C. OTHER EMPLOYEES MENTIONED IN SUMMARY JUDGMENT RECORD
Finally, in addition to examining the evidence regarding the particular Ocean Spray employees emphasized in the parties’ respective briefs, this Court has carefully considered evidence of Ocean Spray’s treatment of ten other employees mentioned within the summary judgment record. First, there is evidence that Ocean Spray treated identically a white employee, Jimmy Holgrum, and a black employee, Curtis Leigh-ton, accused of unintentional time card falsification. On one occasion, Leighton left the facility without punching out at the end of his shift. However, Ocean Spray determined that Leighton had not deliberately failed to punch out, but that he had forgotten to do so. Accordingly, he was suspended without pay for two weeks. Similarly, Holgrum also left the facility without punching out, and upon determining that he had simply forgotten to punch out, Ocean Spray suspended him without pay for two weeks. Thus, Ocean Spray’s identical treatment of Holgrum and Leighton despite the difference in race tends to undermine Matthews’ showing of pretext.
Less favorable to Ocean Spray, however, is the evidence concerning the discipline of a white employee, David Marshall, and a black employee, Curtis Rose, both of whom were caught sleeping on the job, which is also considered the theft of company time. Marshall was given a suspension of unknown length for falling asleep on the job, while Rose was terminated by Ocean Spray for the same offense. Initially, Ocean Spray’s treatment of Marshall and Rose appears to raise a genuine issue of material fact as to whether *210 similarly situated employees were treated differently. However, from the record, it is unclear whether or not Marshall had a past disciplinary record that was comparable to that of Rose, who had been caught sleeping on the job on previous occasions. If Marshall lacked a comparable disciplinary record, he and Rose would not be similarly situated employees despite the fact that they committed the same offense. See Pagano v. Frank, supra at 345; Williams v. Frank, supra at 119.
On a motion for summary judgment, the plaintiff cannot carry his burden of demonstrating pretext where he provides only sketchy details about allegedly similarly situated employees. Smith v. Stratus Computer, Inc., supra at 17 (finding that summary j udgment for an employer was proper where plaintiff failed to present the performance records of the male employees she alleged were similarly situated to herself). Thus, in the absence of details concerning Marshall’s disciplinary record, this Court concludes that a comparison of Ocean Spray’s treatment of Marshall and Rose is not probative on the issue of pretext.
Further, there is evidence that a black employee, Joe Rezendes, and a white employee, David Westgate, were involved in a fight with each other yet were disciplined differently. The circumstances surrounding this incident are not clear; however, Rezendes was suspended without pay for thirly days as a result of it, while Westgate was not disciplined .at all. Nonetheless, as previously discussed, the burden of providing sufficient information to determine whether these two employees were similarly situated lies with the plaintiff. See Smith v. Stratus Computer, Inc., supra at 17. Accordingly, this Court cannot consider Ocean Spray’s treatment of Rezendes and Westgate as evidence of pretext.
Moreover, there is evidence that a white employee, Elliot Dennison, was found to have sexually harassed a female co-employee, including using offensive language, leering and touching. At the time the company learned about the harassment, it had allegedly been going on for several years. Dennison was suspended without pay for thirty days. It is not clear whether Dennison’s offense of sexual harassment would be considered a major violation or a minor violation under the plant rules. Regardless, without some comparison to particular instances of similar offenses by black employees, Ocean Spray’s treatment of Dennison is not probative on the issue of disparate treatment.
Finally, there is evidence that a white employee, Larry McDonald, was caught numerous times in alcohol related incidents in violation of company rules, yet was only given a suspension each time. While the exact nature of these incidents is unclear, intoxication during company time and possession of alcohol on company property are both major violations under the plant rules, like Matthews’ offense of stealing company property. Nonetheless, the plant rules themselves do not require that all major violations be treated equally. Moreover, it appears that there were mitigating circumstances surrounding Ocean Spray’s treatment of McDonald in that there is some suggestion in the record that McDonald is an alcoholic, in which case he would not be similarly situated to the plaintiff. Thus, without specific instances of black employees who committed comparable alcohol or drug related offenses, Ocean Spray’s allegedly “lenient” treatment of McDonald is not probative on the issue of discrimination, and adds nothing to the plaintiffs attempted showing of pretext.
III. OTHER EVIDENCE OF PRETEXT IN THE SUMMARY JUDGMENT RECORD
In addition to his attempted showing of disparate treatment, Matthews offers as evidence of pretext the fact that of the thirty-three current managers and supervisors at Ocean Spray’s Middleboro plant, none is black. Statistical evidence that an employer is generally discriminatory in its treatment of minority employees may be relevant in demonstrating that an individual plaintiff was discriminated against on the basis of race. Lewis v. Area II Homecare for Senior Citizens, Inc., supra at 769. However, the fact that no minority has ever held a supervisory position in the plaintiffs division does not suggest pretext in the absence of evidence concerning whether or not minorities ever applied for such positions, and if so, evidence concerning their relative qualifications. Smith v. Douglas Cable Communications, 881 F. Supp. 1510, 1515 (D.Kan. 1995). Compare Cooper v. Cobe Laboratories, Inc., 743 F.Supp. 1422, 1433 (D.Colo. 1990) (for purposes of disparate impact claim, statistical evidence as to number of females in supervisory and managerial ranks is not probative in the absence of information concerning application rates and qualifications).
Further, in a disparate treatment case, even compelling statistical evidence of racial under-representation in the workforce cannot salvage an individual plaintiffs claim where he has otherwise failed to demonstrate that he was subject to an adverse employment decision because of his race. Washington v. Brown & Williamson Tobacco Corp., 756 F.Supp. 1547, 1566 (M.D. Ga. 1991), aff'd, 959 F.2d 1566 (1992). Hence, this Court concludes that the fact that there are no black managers or supervisors at Ocean Spray’s Middleboro plant is not sufficient evidence to meet Matthew’s burden of demonstrating pretext for the purposes of the present cross-motions for summary judgment.
CONCLUSION
In order to survive Ocean Spray’s motion for summary judgment, Matthews must raise a genuine issue of material fact as to whether Ocean Spray’s reason for firing him, his violation of plant rules against theft, *211 was a pretext for discrimination. However, Matthews has failed to offer any evidence that he was treated differently than white employees similarly situated in all relevant aspects. Rather, the other Ocean Spray employees offered by him in an attempt to show pretext are not, in fact, similarly situated for the purposes of a disparate treatment analysis.
Moreover, Matthews, has failed to produce some other evidence on the summary judgment record that Ocean Spray’s articulated reason for terminating him either lacks reasonable support in the evidence or is simply not credible. See Lewis v. Area II Homecare for Senior Citizens, Inc., supra at 765; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 443. Matthews has not demonstrated some implausibility, inconsistency or contradiction in Ocean Spray’s proffered reason for his termination that would preclude summary judgment at this stage. It is undisputed both that Ocean Spray has steadfastly asserted its nondiscriminatory reason, Matthews’ theft of company product, from the beginning and that Matthews himself admitted taking company product.
This Court is cognizant that under Blare, a plaintiff need only produce evidence that disputes the employer’s explanation in order to survive summary judgment. Nonetheless, where an employer properly asserts that there is no genuine issue of material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Flesner v. Technical Communications Corp., supra at 809. See also Dexter’s Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223, rev. den., 400 Mass. 1104 (1987) (stating that in order to survive summary judgment, a party must produce the requisite quantum of evidence to enable him to reach a jury with his claim). Viewing the present evidence in the light most favorable to Matthews, this Court concludes that he has not produced sufficient evidence to permit a reasonable factfinder to infer that his theft of company product was not the real reason motivating Ocean Spray to terminate him. Accordingly, because Matthews has no reasonable expectation of proving pretext at trial, Ocean Spray is entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff Carleton Matthews’ motion for summary judgment be DENIED. It is further ORDERED that Ocean Spray’s motion for summary judgment be ALLOWED.

To the extent that Matthews contends that the discipline imposed on him in connection with this incident itself demonstrates disparate treatment, such an argument must fail. The fight allegedly occurred when a white co-employee, Lindstrom, called Matthews a “nigger,” provoking him to get off the lift where he had been working and punch Lindstrom in the mouth. While Matthews was suspended without pay for thirty days for this incident, Lindstrom was suspended without pay for only two days. It is clear, however, that Matthews and Lindstrom were not similarly situated with respect to the disciplinary action arising from this fight. Although Lindstrom precipitated the incident by insulting Matthews, under the plant rules such an offense would most likely constitute either the use of abusive language and/or interfering with other employees on the job, both of which are minor violations. Matthews’ conduct in punching Lindstrom, however, is clearly a major violation under the plant rules, so that the offenses committed by the two were not of comparable seriousness. See Morgan v. Massachusetts General Hosp., supra at 189 (holding that where a black plaintiff was terminated for his involvement in a fight with a white co-employee, who was not terminated for the incident, the two were not similarly situated because although the white employee allegedly harassed the plaintiff, leading the plaintiff to strike him in the face, the offenses of harassment and instigating a physical assault are not comparable).